CENTER FOR DISABILITY ACCESS
Ray Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Russell Handy, Esq., SBN 195058
Dennis Price, Esq., SBN 279082
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Brian Whitaker**, | **Case:** 2:19-cv-09457-JAK-AS |
| Plaintiff, | **Plaintiff's Opposition to Defendant Park & Second, LLC's Motion to Dismiss** |
| v. | |
| **Park & Second, LLC,** a California Limited Liability Company; **Joyful Pasta Inc.**, a California Corporation; and Does 1-10, | **Date:** March 30, 2020 **Time**: 8:30 a.m. **Ctrm**: 10B |
| Defendants. | **Hon. John A. Kronstadt** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES ..............................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES .........................................1

   I.     PRELIMINARY STATEMENT ...................................................................1

   II.    The Complaint is Sufficiently Pled ........................................................1

   III.   The Defense ignores the deferential standard given to pleading
          language and demand detailed facts not required in a
          Complaint.......................................................................................5

      A.   The complaint alleges all claims against all defendants. .......................6

      B.   The complaint sufficiently alleges the basis of federal
          jurisdiction...................................................................................6

      C.   The defense argument about "intent to return" is misguided
          and mischaracterizes the law...........................................................7

   IV.   The defense arguments about motives have no relevance to the
          sufficiency of the complaint. ..........................................................10

   V.    While the ADA case is active, there is no basis to decline to
          exercise supplemental jurisdiction over the Unruh claim...............16

      A.   The interests of judicial economy would certainly not be served
          by declining to exercise supplemental jurisdiction over the
          state claim...................................................................................16

      B.   The defense does not provide any supporting argument about
          how declining to exercise supplemental jurisdiction over
          the state claim would result in more "fairness to the

parties" or address some "comity" argument. Instead, the
defense's arguments relate to relieving burdens on the
court and forum shopping. Neither argument can
withstand scrutiny. ............................................................18

VI.   California's high frequency litigant statutes do not justify
dismissal of plaintiff's state claim. ...................................22

VII.   CONCLUSION ....................................................................25

Opposition to Motion to Dismiss                Case: 2:19-cv-09457-JAK-AS

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,*
    603 F.3d 666 (9th Cir. 2010) .......................................................................... 1

*Baker v. Palo Alto University, Inc.,*
    2014 WL 631452 (N.D. Cal., 2014) ............................................................ 17

*Bell Atlantic Corp. v. Twombly,*
    550 US 544 (2007) ........................................................................................ 6

*Borough of W. Mifflin v. Lancaster,*
    45 F.3d 780 (3d Cir. 1995) .......................................................................... 18

*Botosan v. Paul McNally Realty,*
    216 F.3d 827 (9th Cir. 2000) ........................................................................ 7

*Braden v. Wal–Mart Stores, Inc.,*
    588 F3d 585 (8th Cir. 2009) ......................................................................... 5

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
    631 F.3d 939 (9th Cir. 2011) ........................................................................ 8

*City of Chicago v. Mills,*
    204 U.S. 321, 27 S. Ct. 286, 51 L. Ed. 504 (1907) .................................... 19

*Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,*
    867 F.3d 1093 (9th Cir. 2017) ........................................................... 9, 10, 14

*Daenzer v. Wayland Ford, Inc.,*
    193 F. Supp. 2d 1030 (W.D. Mich. 2002) .................................................. 18

*Delgado v. Orchard Supply Hardware Corp.,*
    826 F. Supp. 2d 1208 (E.D. Cal. 2011) ...................................................... 17

*D'Lil v. Best W. Encina Lodge & Suites,*
    538 F.3d 1031 (9th Cir. 2008) ..................................................... 10, 13, 14

*Doran v. 7-Eleven, Inc.,*
    524 F.3d 1034 (9th Cir. 2008) .................................................................. 10

*Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.,*
  24 F.3d 1545, 1555-56 (9th Cir. 1994).................................................. 19, 21

*Feezor v. Chico Lodging, LLC,*
  422 F. Supp. 2d 1179 (E.D. Cal. 2006) .....................................................13

*Graf v. Elgin, J. & E. Ry.,*
  790 F.2d 1341 (7th Cir.1986) ...................................................................16

*Houston v. Marod Supermarkets, Inc.,*
  733 F.3d 1323 (11th Cir. 2013) ................................................................15

*In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994,*
  909 F. Supp. 1083 (N.D. Ill. 1995), aff'd and remanded sub nom.
    *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994,*
  96 F.3d 932 (7th Cir. 1996) ......................................................................19

*Johnson v. Morning Star Merced, LLC,*
  2018 WL 4444961 (E.D. Cal. 2018)..........................................................24

*Keeton v. Hustler Mag., Inc.,*
  465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ............................20

*Kohler v. Rednap, Inc.,*
  794 F. Supp. 2d 1091 (C.D. Cal. 2011) ............................................... 18, 21

*Kyles v. J.K. Guardian Sec. Servs.,*
  222 F.3d 289 (7th Cir. 2000)....................................................................10

*Los Angeles Cnty. Metro. Transp. Auth. v. Superior Court,*
  123 Cal. App. 4th 261 (2004) ...................................................................12

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ....................................................................................9

*Moeller v. Taco Bell Corp.*
  816 F.Supp.2d 831 (N.D. Cal. 2011)...........................................................2

*Molski v. Evergreen Dynasty Corp. II,*
  521 F.3d 1215 (9th Cir. 2008) ..................................................................13

iv

*Moore v. Dollar Tree Stores Inc.*,
   85 F. Supp. 3d 1176 (E.D. Cal. 2015) ............................................................ 18

*N. Cheyenne Tribe of N. Cheyenne Indian Reservation v. Adsit*,
   668 F.2d 1080, 1088 (9th Cir. 1982), rev'd sub nom. on a different
   principle, *Arizona v. San Carlos Apache Tribe of Arizona*,
   463 U.S. 545, 103 S. Ct. 3201, 77 L. Ed. 2d 837 (1983) .............................. 22

*Peloza v. Capistrano Unified Sch. Dist.*,
   37 F.3d 517 (9th Cir. 1994) ............................................................................ 5

*Rosado v. Wyman*,
   397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) ................................... 16

*Schoors v. Seaport Village Operating Co., LLC*,
   2017 WL 1807954 (S.D. Cal. May 5, 2017) ................................................... 18

*Thermtron Prod., Inc. v. Hermansdorfer*,
   423 U.S. 336, 96 S. Ct. 584, 46 L. Ed. 2d 542 (1976), *abrogated on
   unrelated grounds by Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) ............................... 22

*Trafficante v. Metro. Life Ins. Co.*,
   409 U.S. 205 (1972) ........................................................................................ 10

*Turner v. Ass'n of Am. Med. Colleges*,
   193 Cal. App. 4th 1047 (2011) ....................................................................... 12

*Wheeler v. City & Cty. of Denver*,
   229 U.S. 342, 33 S. Ct. 842, 57 L. Ed. 1219 (1913) ..................................... 19

*White v. Wisco Restaurants, Inc.*,
   2018 WL 1510611 (S.D. Cal. Mar. 27, 2018) ............................................... 21

*Wilson v. Kayo Oil Co.*,
   563 F.3d 979 (9th Cir. 2009) ........................................................................... 9

v

**Statutes**

28 U.S.C. § 1367(c) ........................................................................... 19

42 U.S.C. § 12182(a) ........................................................................... 6

42 U.S.C. § 12183(a)(2) ...................................................................... 2

Cal. Civ. Code § 51(f) ........................................................................ 16

Cal. Civ. Proc. Code § 425.50(a)(4) ................................................. 23

Cal. Civ. Proc. Code § 425.55(b)(1) ................................................. 23

Cal. Civ. Proc. Code § 425.55(b)(2) ................................................. 23

Cal. Gov. Code § 68085.35 ................................................................ 23

Cal. Gov. Code § 70616.5 ................................................................... 23

**Other Authorities**

2015 CA A.B. 1521 (NS) (September 10, 2015) .................................. 23

**Rules**

28 C.F.R. § 36.201(b) ........................................................................... 6

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PRELIMINARY STATEMENT

Plaintiff, who suffers from a C-4 spinal cord injury, filed the instant claims against the defendants because the La Strada restaurant failed to provide accessible dining surfaces and restrooms.  Defendant Park & Second, LLC moves for dismissal of the Complaint on the basis that Whitaker fails to state a claim, lacks standing, and requests the Court to decline to exercise supplemental jurisdiction as to Plaintiff's Unruh claim.  These arguments do not have merit. Whitaker has standing, the Complaint contains sufficient factual allegations, and the Court should retain supplemental jurisdiction.

### II.  The Complaint is Sufficiently Pled

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and give "the defendant fair notice of what the . . . claim is and grounds upon which it rests" in compliance with Rule 8(a) of the Federal Rules of Civil Procedure. In order to determine whether a pleading contains the necessary allegations, a party must understand what constitutes a viable claim under the cause of action pled.

Here, Whitaker's claims are based on Title III of the ADA. To succeed on a Title III ADA architectural barrier claim, "a plaintiff must show that: (1) he is disabled . . . (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations" because of his disability.[1] "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met

---

[1] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

if there was a violation of applicable accessibility standards."[2] This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities"[3] and, where there are no alterations, "a failure to remove architectural barriers...in existing facilities...where such removal is readily achievable."[4]

Thus, the following is a simplified statement of the elements necessary for Whitaker to allege under this section: (1) Whitaker must be disabled; (2) Defendant Shore Restaurant Group, LLC's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA; (3) Defendant Shore Restaurant Group, LLC must be a responsible party, i.e., owner, operator, lessor or lessee; (4) Defendant Shore Restaurant Group, LLC's facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendant failed to remove; (5) Whitaker must have actually encountered this non-removed and unlawful barrier; (6) The barrier must continue to impact Whitaker because either (a) he will return and face it again or (b) Whitaker is being deterred from returning because of his knowledge of the barrier.

As demonstrated by the table below, Whitaker has made all the necessary factual and legal allegations necessary to state a claim.

| Element | Fact Alleged |
| --- | --- |
| 1. Disability | "Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to |

---

[2] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)

[3] 42 U.S.C. § 12183(a)(2)

[4] 42 U.S.C. § 12182(b)(2)(A)(iv)

| | |
|---|---|
| | walk. He suffers from a C-4 spinal cord injury. He is a quadriplegic. He uses a wheelchair for mobility."<br><br>• (Complaint, p. ¶ 1). |
| 2. Place of Public Accommodation | "The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment."<br><br>• (Complaint, ¶ 11). |
| 3. Responsible Parties | "Defendant Park & Second, LLC owned the real property located at or about 4716 E. 2nd Street, Long Beach, California, in October 2019.<br><br>Defendant Park & Second, LLC owns the real property located at or about 4716 E. 2nd Street, Long Beach California, currently.<br><br>Defendant Joyful Pasta Inc. owned La Strada located at or about 4716 E. 2nd Street, Long Beach, California, in October 2019.<br><br>Defendant Joyful Pasta Inc. owns La Strada located at or about 4716 E. 2nd Street, Long Beach, California, currently."<br><br>• (Complaint, ¶¶ 2-5). |
| 4. Plaintiff's Encounter with Barriers. | "Plaintiff went to the Restaurant in October 2019 with the intention to avail himself of its goods, motivated in part to determine if the defendants comply with the |

3

| | |
|---|---|
| | disability access laws.

Unfortunately, on the date of the plaintiff's visit, the defendants failed to provide accessible dining surfaces.

On information and belief, the defendants currently fail to provide accessible dining surfaces.

Plaintiff personally encountered these barriers.

The failure to provide accessible facilities created difficulty and discomfort for the Plaintiff."

• (Complaint, ¶¶ 10-16). |
| 5. The Barriers are Readily Achievable to Remove | "The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable."

• (Complaint, ¶ 19). |
| 6. Plaintiff is deterred from returning. | "Plaintiff will return to the Restaurant to avail himself of its goods and to determine compliance with the disability access laws once it is represented to him that the Restaurant and its facilities are accessible. Plaintiff is currently deterred from doing so because of his |

4

| | knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again." |
| --- | --- |
| | • (Complaint ¶ 20). |

Each of the required factual allegations have been made.   Plaintiff's Complaint alleges sufficient facts to satisfy Rule 8.

## III.   The Defense ignores the deferential standard given to pleading language and demand detailed facts not required in a Complaint.

On a Motion to Dismiss under Rule 12(b)(6), the Court is required to "read the complaint charitably, to take all well-pleaded facts as true, and to assume that all general allegations embrace whatever specific facts might be necessary to support them."[5] All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim.[6] The Court must accept as true all material factual allegations in the complaint: "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."[7]

Here, the defense only identifies three areas where the complaint fails to state a claim: (1) because it fails "to identify which claim is directed towards which defendant;"[8] (2) it fails to provide "the basis for why the matter is filed in

[5] *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

[6] *Braden v. Wal–Mart Stores, Inc.*, 588 F3d 585, 595 (8th Cir. 2009) ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice").

[7] *Bell Atlantic Corp. v. Twombly*, 550 US 544, 556 (2007) (internal quotes omitted).

[8] Defense Brief (Docket Entry 11), p. 3, line 22.

Opposition to Motion to Dismiss          Case: 2:19-cv-09457-JAK-AS

federal court rather than State Court;"[9] and (3)  fails to allege sufficient convincing facts demonstrating an intent to return.[10] But none of these arguments can withstand scrutiny. Whitaker will discuss each.

### A.      The complaint alleges all claims against all defendants.

There are two defendants in this case: (1) the property owner, Park & Second, LLC and (2) the business operator, Joyful Pasta Inc.  The complaint identifies their respective roles.[11] Under the ADA, both property owner and business operator are equally and jointly responsible for compliance with the ADA. The general rule of the ADA states that it applies to all persons who "owns, leases (or leases to), or operates a place of public accommodation."[12]  The Code of Federal Regulations implementing Title III of the ADA states: "Both the landlord who owns the building . . . and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part."[13] And, as the Ninth Circuit has framed it, the landlord is fully responsible for all violations within its tenants facilities--no matter what a lease agreement says.[14]  Thus, the complaint makes all allegations against all defendants. There is no failure in pleading.

### B.      The complaint sufficiently alleges the basis of federal jurisdiction

The complaint only has two claims. The first is a federal ADA claim. As the complaint notes: "The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the

---

[9] Defense Brief (Docket Entry 11), p. 3, lines 22-23.

[10] Defense Brief (Docket Entry 11), p. 4, lines 9-13.

[11] Complaint, ¶¶ 2-5.

[12] 42 U.S.C. § 12182(a).

[13] 28 C.F.R. § 36.201(b).

[14] *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832-34 (9th Cir. 2000)

6

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq."[15] The second claim is a state claim that is entirely predicated upon the federal claim: "The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f)."[16] And the complaint identifies the basis for the court's jurisdiction over the state claim: "Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act."[17] Thus, the complaint is sufficiently pled.

###   C.   The defense argument about "intent to return" is misguided and mischaracterizes the law.

The defense argues that plaintiff has failed to "support each element of standing" to obtain a remedy under the ADA. Without citing authority on the issue of "intent to return," the defense argues that several factors are relevant, including "the distance between the plaintiff's residence and the accommodation; 2) the frequency of the plaintiff's past visits both to the area where the accommodation is located and to the accommodation itself; and 3) the definiteness of the plaintiff's plans to return to the accommodation in the future, including reasons for making the return trip and visiting the place of public accommodation."[18] Because these evidentiary facts are not found in the complaint, the defense argues that the complaint is deficient.

This argument lacks merit for two reasons. First, a plaintiff does not have to have any current intent to return. Whitaker is not relying upon an "intent to return" basis for standing. Instead, Whitaker has alleged that he is deterred from

---

[15] Complaint, ¶ 7.

[16] Complaint, ¶ 32.

[17] Complaint, ¶ 8.

[18] Defense Brief (Docket Entry 11), p. 7, lines 7-14.

returning, i.e., will not return while the barriers exist.[19] This is the continuing deterrence doctrine and it provides a different theory standing than someone that has plans to return. As the Ninth Circuit has repeatedly held: "Demonstrating an intent to return to a noncompliant accommodation *is but one way* for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual *also* suffers a cognizable injury *if he is deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."[20]

Perhaps more importantly, though, the defense is confusing pleading standards with trial burdens. The Supreme Court has explained that the degree of evidence regarding standing differs depending on the stage of the case:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.
>
> [*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).]

---

[19] Complaint, ¶ 20.

[20] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011) (emphasis added).

Opposition to Motion to Dismiss          Case: 2:19-cv-09457-JAK-AS

According to the Ninth Circuit, at the *pleading stage*, only the "minimal allegations" that "a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers" are sufficient to "establish that a plaintiff's injury is actual or imminent."[21] That is exactly what Whitaker has pled in this case. As the *Wilson* court notes, this does not mean that complaint allegations will "survive a factual attack" but they are sufficient at the pleading stage.[22]

And just recently, the Ninth Circuit weighed in again on the topic. In *Civ. Rights Educ.*,[23] several disabled plaintiffs sued a hotel chain for inaccessibility under the ADA. They did not have any concrete or specific plans to return and the defendants argued that it was not enough to say that "they do not plan to stay at the hotels unless and until [defendant] remedies the violation."[24] But the Ninth Circuit rejected the defense argument: "The Named Plaintiffs need not intend to visit the hotels until after remediation" because "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury [that] continues so long as equivalent access is denied."[25]

"The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with

---

[21] *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009).

[22] *Id.*

[23] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017)

[24] *Civ. Rights Educ.*, 867 F.3d at 1100.

[25] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.

the Act."[26] In ADA cases, standing should be conferred even "to the outermost limits of Article III."[27] Thus, "[a]llegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."[28] And the Ninth Circuit has held that alleging "a desire to visit the accommodation if it were made accessible" is sufficient.[29]

The complaint is sufficiently pled. Whitaker alleges that he will return to the business to both "avail himself of its goods and to determine compliance with the disability access laws" but only "once it is represented to him" that the business is accessible.[30] Until then, Whitaker is deterred from returning due to "his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site."[31] This is the same language that the Ninth Circuit has found sufficient to state a claim.

## IV.   The defense arguments about motives have no relevance to the sufficiency of the complaint.

The defense decries the number of lawsuits brought by Whitaker and argues that the "continued spates of ADA 'drive-by' and 'surf-by' lawsuits, often initiated by the same attorneys representing the same individuals, suggest that there are incentives at work other than just remedying actual, ongoing injuries and making significant accessibility improvements under the ADA. These serial ADA litigants bring repeated claims without ever intending to buy any products

---

[26] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1-39-1040 (9th Cir. 2008), quoting, *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).

[27] *Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289, 294 (7th Cir. 2000).

[28] *Doran*, 524 F.3d at 1041

[29] *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) .

[30] Complaint, ¶ 20.

[31] Complaint, ¶ 20.

Opposition to Motion to Dismiss          Case: 2:19-cv-09457-JAK-AS

1  or services from the businesses that they sue, testing the constitutional

2  requirement that all cases present an actual case and controversy."[32]

3       This argument makes no sense, demonstrates a misunderstanding or the

4  law and has no relevance to whether the complaint is sufficiently pled. First,

5  given his level of advocacy, it would seem that Brian Whiter, a profoundly

6  disabled quadriplegic, has demonstrated his commitment to bringing law

7  breaking businesses into compliance. As for the *other incentives* mentioned by the

8  defense, they are obviously referring to the penalties sought under the Unruh

9  Civil Rights Act or attorney's fees collected by plaintiff's counsel.

10      The implied argument is that the plaintiff is actively engaged in serial

11  litigation to line his own pockets with the statutory penalties available under the

12  Unruh Civil Rights Act and, therefore, his claims should be looked at with

13  skepticism. This argument should be rejected for several reasons. First, of course

14  a serial litigator is motivated by the right to recover statutory penalties. That is

15  the *very purpose* of statutory penalties:

16  

17       It is apparent from this legislative history that section 52 has at

18       least two important non-punitive purposes. The first is simply to

19       provide increased compensation to the plaintiff. The second

20       purpose, and perhaps the more important one, is *to encourage*

21       *private parties* to seek redress through the civil justice system by

22       *making it more economically attractive for them to sue.*

23            [*Los Angeles Cnty. Metro. Transp. Auth. v. Superior*
             *Court*, 123 Cal. App. 4th 261, 270-71 (2004)
24           (emphasis added).]

25  

26  Thus, the fact that the plaintiff is motivated by the right to recover statutory

27  penalties is not an *abuse* of the law, it is the intended function of the law.

28  

---

[32] Defense Brief (Docket Entry 11), p. 7, lines 20-26.

Likewise, the existence of one-way fee shifting provisions are designed specifically to "encourage *vigorous* enforcement of the Unruh Act" by providing penalties and one-way fee shifting.[33] In fact, the *Turner* court conducted some in-depth legislative history analysis and concluded that the one-way fee shifting entitlement given to persons with disabilities, but denied to prevailing defendants, was:

> [C]reated by legislators as a deliberate stratagem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy. In particular, such provisions reflect the Legislature's intent to encourage injured parties to seek redress—and thus simultaneously enforce public policy—in situations where they otherwise would not find it economical to sue.
>
> > [*Turner*, 193 Cal. App. 4th at 1060 (internal cites and quote marks omitted).]

The court in *Feezor v. Chico Lodging,* reached the same conclusion. The court was faced with a standing challenge and an attack on the plaintiff's credibility because the plaintiff had filed numerous other cases. The Court rejected the implication and stated, "The fact that plaintiff is fulfilling the Congressional purpose when it provided for private enforcement of the ADA is hardly evidence of bad faith."[34]

Second, the plaintiffs' motivation is not singular. As a profoundly disabled quadriplegic, the prosecution of these cases promote the plaintiff's personal right to full and equal access and work a direct benefit to him. So, while the recovery

---

[33] *Turner v. Ass'n of Am. Med. Colleges*, 193 Cal. App. 4th 1047, 1063-64 (2011).

[34] *Feezor v. Chico Lodging, LLC*, 422 F. Supp. 2d 1179, 1181 (E.D. Cal. 2006).

of penalties is a motivating factor, forcing a business to remove unlawful barriers to access is another motivation. The fact that there are dual motivations resulting in serial litigation does not suggest that the claims are invalid or fabricated: "while self-interest surely drives serial access litigation in part, the reason there can be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access, and so many disabled people are thwarted from participating equally in the activities of everyday life."[35]

And the defense argument that plaintiff's litigation history taints the credibility of his allegation that he is deterred from returning or will return when the facilities are fixed or, for that matter, that a plaintiff must have a "real" motive for visiting a business and not merely a litigation purpose . . . have been thoroughly rejected by the Ninth Circuit.

In *D'Lil*, where a disabled woman was suing a hotel for ADA violations, the trial court found that D'Lil did not have standing and focused on the fact that the plaintiff had "approximately sixty prior ADA suits," and expressed "concerns about D'Lil's credibility focused particularly on her past ADA litigation" and found that she was not a legitimate plaintiff because of this history.[36] But the Ninth Circuit reversed the *D'Lil* trial court's ruling and held that it was going to "reject the legal reasoning" despite the deference normally owed to the district court.[37]

The Ninth Circuit first pointed out the unique nature of ADA litigation and the public policy interest and benefit in having a small number of "committed individuals bring[ing] serial litigation advancing the time when public

---

[35] *Molski v. Evergreen Dynasty Corp. II*, 521 F.3d 1215, 1220 (9th Cir. 2008).

[36] *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008).

[37] *Id*. at 1039.

accommodations will be complaint with the ADA."[38] The Ninth Circuit then held that, "Although we afford great deference to a district court's credibility assessments, on this record we cannot agree that D'Lil's past ADA litigation was properly used to impugn her credibility. Accordingly, because the district court focused on D'Lil's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina, we reject its purported adverse credibility determination."[39]

Not only has the Ninth Circuit held that an extensive litigation history says nothing about that plaintiff's intent to return and cannot be used to rebut a stated intention to return, the Ninth Circuit has now held that ADA "testers"—folks actively looking for non-complying businesses—have full standing. In *Civ. Rights Educ.*, the Ninth Circuit had to grapple with the question of "whether a plaintiff has constitutional standing where her only motivation for visiting a facility is to test it for ADA compliance."[40] After a thorough analysis of the various circuits that have found that ADA plaintiffs have "tester" standing, the Ninth Circuit found "as a matter of first impression, a plaintiff suing under Title III of the ADA can claim tester standing; plaintiffs' status as testers, rather than bona fide hotel patrons, [does] not deprive them of standing."[41] And the reason is simple: "motivation is irrelevant to the question of standing under Title III of the ADA."[42]

And this makes complete sense. Regardless of the reason for going to a place open to the public, a person with a disability has a right to be free from discrimination and to enjoy barrier-free facilities. It is no defense to an unlawful-

---

[38] *Id.* at 1040.

[39] *Id.*

[40] *Civ. Rights Educ.*, 867 F.3d at 1096.

[41] *Id.* at 1093.

[42] *Id.* at 1102.

discrimination charge to cry, "but you were looking for a violation" or "you were hoping we were breaking the law." Thus, if the plaintiff's litigation record does anything, it helps *establish* his standing. The plaintiff has declared that he will return to the business (after it is supposedly fixed) to assess compliance. As discussed below, this is a legitimate motive.

One of the out-of-circuit cases that the Ninth Circuit found persuasive in reaching its tester-standing decision was *Houston v. Marod*. In *Houston*, the defense argued that plaintiff's "litigation history cast doubt on his sincerity to return to the Presidente Supermarket and face future discrimination. Marod attached to its motion a list of 271 cases in which Houston or an advocacy group he represents was a party, all filed in the Southern and Middle Districts of Florida."[43] But the *Houston* court rejected the argument. Like the Ninth Circuit in *Civ. Rights Educ.*, the *Houston* court held that a plaintiff's rights to be free from architectural barrier discrimination does "not depend on the motive behind" the plaintiff's visit.[44] The *Houston* court held: "the tester motive behind [plaintiff's] *past and future visits* to the Presidente Supermarket does not preclude his having standing to sue for invasions of his legal rights."[45]

Thus, in the present case, even if the plaintiff's *sole* motive for initially visiting the business and his *sole* motive for making a future visit is a tester motive, he still has standing. Plaintiff's allegations of dual motives for his initial visit[46] and his dual motives to return[47] sufficiently state a claim for standing. The fact that the plaintiff has an extensive litigation history and is a veteran tester supports his claim that he will return. Aside from the near-universal enjoyment

---

[43] *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1326 (11th Cir. 2013).

[44] *Id.* at 1332.

[45] *Id.* (emphasis added).

[46] Complaint, ¶ 10.

[47] Complaint, ¶ 20.

Opposition to Motion to Dismiss            Case: 2:19-cv-09457-JAK-AS

1    of hanging out and eating at a sports bar, the plaintiff has an important *litigation*

2    reason to return: to have standing. This is an entirely appropriate motivation.

3

4

5    **V.    While the ADA case is active, there is no basis to decline to exercise supplemental jurisdiction over the Unruh claim.**

6          Defense argues that the court should decline to exercise supplemental

7    jurisdiction over the Unruh claim.  A review of each factor demonstrates that

8    defense's argument has no merit.

9

10   **A.    The interests of judicial economy would certainly not be served by declining to exercise supplemental jurisdiction over the state claim**

11

12         The Courts have recognized that judicial economy is the "*essential policy*

13   behind the modern doctrine of pendent jurisdiction . . . ."[48]  As the Supreme

14   Court noted: the "commonsense policy of pendent jurisdiction" is "the

15   conservation of judicial energy and the avoidance of multiplicity of litigation."[49]

16   Here, Whitaker's ADA and Unruh claims are inextricably intertwined. A

17   violation of the ADA is a per se violation of Unruh.[50] The incident that forms the

18   basis of both claims is identical. The witnesses are identical. All the documentary

19   evidence (photographs, measurements, declarations, etc.) are identical. All the

20   case law, regulatory material, regulations, and accessibility standards necessary

21   to demonstrate liability under both claims in this case are identical. Whitaker's

22   counsel is not aware of a federal and state claim more intertwined than the

23   ADA/Unruh pair.

24         Numerous courts have recognized the inescapable conclusion that these

25   ADA/Unruh case are uniquely wedded and it makes no sense to separate them.

26

27   _____
     [48] *Graf v. Elgin, J. & E. Ry.,* 790 F.2d 1341, 1347–48 (7th Cir.1986)

28   [49] *Rosado v. Wyman*, 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).
     [50] Cal. Civ. Code § 51(f).

1    "Forcing these parties to litigate two nearly-identical cases in separate venues—

2    one here and one in state court—is neither convenient, economical, nor fair."[51]

3    Likewise, the *Delgado* reasoned:

4

5        Here, the claims arise from a common nucleus of operative facts.

6    Both the federal and state law claims are based upon architectural

7    barriers which infringe upon the accessibility to the OSH Store.

8    Accordingly, this Court has supplemental jurisdiction over the

9    state law claims. The Court will exercise supplemental jurisdiction

10   over the state law claims. Here, the state issues are not unsettled

11   or novel and complex. Plaintiff's state and federal law claim

12   involve the identical nucleus of operative facts, and require a very

13   similar, if not identical, showing in order to succeed. If this court

14   forced plaintiff to pursue his state law claims in state court, the

15   result would be two highly duplicative trials, constituting an

16   unnecessary expenditure of plaintiff's, defendant's, and the two

17   courts' resources.

18       [*Delgado v. Orchard Supply Hardware Corp.*, 826 F.
     Supp. 2d 1208, 1221 (E.D. Cal. 2011).]

19

20

21

22

23

24

25

26

27

28

---

[51] *Baker v. Palo Alto University, Inc.*, 2014 WL 631452, *2 (N.D. Cal., 2014)

Opposition to Motion to Dismiss          Case: 2:19-cv-09457-JAK-AS

The *Kohler* case also presented a lengthy analysis of the issue and concluded that fairness favored keeping the Unruh claim in federal court "rather than in a separate, and largely redundant, state-court suit."[52] Another court held that supplemental jurisdiction should be exercised where "declining jurisdiction would simply require twice the expenditure of resources as to the evidentiary determinations."[53] Another framing of the analysis for an ADA/Unruh paired case states that supplemental jurisdiction should be exercised to avoid "two parallel proceedings, one in federal court and one in the state system."[54] There is simply no escaping the fact that the ADA and Unruh claims "both involve identical alleged facts, witnesses, and evidence."[55] Courts have said it makes no sense to find otherwise. "The state and federal claims are so intertwined that it makes little sense to decline supplemental jurisdiction. To do so would create the danger of multiple suits, courts rushing to judgment, increased litigation costs, and wasted judicial resources."[56]

**B.      The defense does not provide any supporting argument about how declining to exercise supplemental jurisdiction over the state claim would result in more "fairness to the parties" or address some "comity" argument. Instead, the defense's arguments relate to relieving burdens on the court and forum shopping. Neither argument can withstand scrutiny.**

The exercise of supplemental jurisdiction is mandatory, unless the exercise of jurisdiction is prohibited by section 1367(b) or falls under one of the exceptions set forth in section 1367(c).[57]  Under section 1367(c), a court may

---

[52] *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011).

[53] *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1043 (W.D. Mich. 2002).

[54] *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995).

[55] *Schoors v. Seaport Village Operating Co., LLC*, 2017 WL 1807954, *4 (S.D. Cal. May 5, 2017).

[56] *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176, 1194 (E.D. Cal. 2015).

[57] *Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994), overruled on other grounds by

---

18

decline to exercise supplemental jurisdiction over a related state claim only if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[58]

The defense argues that plaintiff chose federal court because it was a better forum for him: "Defendant asserts this matter is in Federal District Court to get around the enhanced fees of the frequent filer requirements" in state court.[59] But even if that were true – and it does not begin to identify all the reasons that federal court is better for a plaintiff – it is irrelevant. It is a long-established fact that when a party has a legitimate basis for federal jurisdiction, "his motive in preferring a Federal tribunal is immaterial."[60] In fact, "the cases are numerous in which it has been decided that the motives of litigants in seeking Federal jurisdiction are immaterial."[61] Thus, "We need not concern ourselves with why these parties prefer to be in federal court so long as there is a legitimate basis for jurisdiction."[62] And, even if a court wanted to concern itself with the motives of a plaintiff in choosing the federal forum, that would not matter either.

---

*California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

[58] *Id.*, *citing*, 28 U.S.C. § 1367(c).

[59] Defense Brief (Docket Entry 11), p. 4, lines 7-8.

[60] *City of Chicago v. Mills*, 204 U.S. 321, 330, 27 S. Ct. 286, 289, 51 L. Ed. 504 (1907).

[61] *Wheeler v. City & Cty. of Denver*, 229 U.S. 342, 351, 33 S. Ct. 842, 844, 57 L. Ed. 1219 (1913).

[62] *In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F. Supp. 1083, 1090 (N.D. Ill. 1995), aff'd and remanded sub nom. *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932 (7th Cir. 1996).

---

19

As the Supreme Court has noted, there is not nothing improper with "the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations."[63]

Most courts understand this obvious and established principle. That is why most federal judges respond to cries of "forum-shopping" with something akin to Judge M. James Lorenz's recent holding:

> Finally, Defendant argues under the catchall subsection (c)(4) that Plaintiff is forum shopping to avoid the procedural hurdles under state law, and that this creates "exceptional circumstances" and "compelling reasons for declining jurisdiction." Declining jurisdiction outside the subsection (c)(1)–(3) should be the exception, rather than the rule. This would occur only if the circumstances are quite unusual. That procedure in state court differs from procedure in federal court, and that the plaintiff may select the forum based on her preference is not an unusual circumstance. It has long been decided that federal procedural rules govern in federal court regardless of their effect on state substantive rights.
>
> Furthermore, the plaintiff is "the master of the claim," and by pleading can either subject him– or herself to, or avoid, federal jurisdiction. Even if the Court were to conclude that this case presents exceptional circumstances and compelling reasons, it would also have to conclude that dismissal would best accommodate the values of economy, convenience, fairness, and

---

[63] *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 778–79, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

comity.  For the reasons stated above, dismissing state law claims would not accommodate any of those values.

> [*White v. Wisco Restaurants, Inc.*, 2018 WL 1510611, at *4 (S.D. Cal. Mar. 27, 2018).]

Or, as another court stated when rejecting a claim of improper-forum shopping:

> First, the fact that Plaintiff is "forum shopping" by filing suit in this Court rather than state court does not constitute a "compelling reason" for declining jurisdiction. There is no reason why Plaintiff should have to file his claims in state court instead. This sort of forum-shopping is commonplace among plaintiffs and removing defendants alike and is not an 'exceptional' circumstance giving rise to compelling reasons for declining jurisdiction, as required by section 1367(c)(4).

> [*Kohler*, 794 F. Supp. 2d at 1096.]

Finally, defense urges this court to decline to exercise supplemental jurisdiction to ease the court's burden. "This situation, and the burden the ever-increasing number of such cases poses to the federal courts, presents 'exceptional circumstances' and 'compelling reasons' that justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim."[64]

This argument lacks any merit. It is "clearly impermissible" for a district court to refuse jurisdiction and send it to state court "to ease docket congestion."[65]  According to the Supreme Court, whether jurisdiction is appropriate in a federal court, "has never been dependent on the state of the

---

[64] Defense Brief (Docket Entry 11), p. 12, lines 8-9.
[65] *Exec. Software,* 24 F.3d at 1561.

Opposition to Motion to Dismiss              Case: 2:19-cv-09457-JAK-AS

1   federal court's docket. It is indeed unfortunate if the judicial manpower provided
2   by Congress in any district is insufficient to try with reasonable promptness the
3   cases properly filed in or removed to that court in accordance with the applicable
4   statutes. But an otherwise properly removed action may no more be remanded
5   because the district court considers itself too busy to try it than an action properly
6   filed in the federal court in the first instance may be dismissed or referred to state
7   courts for such reason."[66]

8       The Ninth Circuit stated that: "It is a well-established point, however, that
9   conservation of federal judicial resources is not a proper reason for dismissing a
10  case from the federal courts. An action properly filed in district court is not to be
11  dismissed or referred to state court simply because the district court considers
12  itself too busy to try the action."[67]

## VI.   California's high frequency litigant statutes do not justify dismissal of plaintiff's state claim.

16      California's "high-frequency litigant" statutes do not give reason under
17  the § 1367(c) exceptions to decline supplemental jurisdiction. "High-frequency
18  litigants" are defined by section 425.55 of the California Code of Civil
19  Procedure as "A plaintiff who has filed 10 or more complaints alleging a
20  construction-related accessibility violation within the 12-month period
21  immediately preceding the filing of the current complaint alleging a

---

[66] *Thermtron Prod., Inc. v. Hermansdorfer*, 423 U.S. 336, 344, 96 S. Ct. 584, 590, 46 L. Ed. 2d 542 (1976), *abrogated on unrelated grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996).

[67] *N. Cheyenne Tribe of N. Cheyenne Indian Reservation v. Adsit*, 668 F.2d 1080, 1088 (9th Cir. 1982), rev'd sub nom. on a different principle, *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 103 S. Ct. 3201, 77 L. Ed. 2d 837 (1983).

construction-related accessibility violation"[68] or "An attorney who has represented... 10 or more high-frequency litigant plaintiffs in actions that were resolved within the 12-month period immediately preceding the filing of the current complaint..."[69] Undoubtedly, many of plaintiff's counsel's clients fall within this definition, although plaintiff's counsel himself does not.

However, this means little to the prosecution of a case. There are only three consequences in state court litigation for a plaintiff being identified as a high-frequency litigant. First, such plaintiffs must add some specific facts in their complaint and verify the complaint certifying that it comports with... the exact language of Fed. R. Civ. Proc. 11.[70] But those "facts" are either required under Federal Rule 26's initial disclosure requirement or readily available in discovery. Additionally, plaintiff's counsel is already subject to Rule 11 in federal court. Second, there is an additional $1,000 filing fee,[71] which is divided into the general fund and the trial court trust fund.[72] This fee serves to relieve workload to the trial courts.[73] Ironically, though, the workload of the trial courts would be increased if this Court were to decline supplemental jurisdiction. Finally, there are stay and early evaluation procedures in state court for these cases. But those same procedures—almost identical in nature—are available in the Central District with the ADA Disability Access Litigation program and use of ADR Form 20. A defendant can request and a court can *sua sponte* order the parties to participate in this process.

In any event, there is nothing unique in the state court procedures that are not replicated in some fashion in the federal system. It is not the federal court's

---

[68] Cal. Civ. Proc. Code § 425.55(b)(1).
[69] Cal. Civ. Proc. Code § 425.55(b)(2).
[70] Cal. Civ. Proc. Code § 425.50(a)(4).
[71] Cal. Gov. Code § 70616.5.
[72] Cal. Gov. Code § 68085.35.
[73] 2015 CA A.B. 1521 (NS) (September 10, 2015).

23

task to decide that it likes state court *procedures* better and to force a plaintiff to take his case to state court because of that preference. That is not a compelling reason. In summary, as one court stated about the most prolific ADA plaintiff on the planet:

> Litigants in federal court routinely bring both federal and state law causes of action, and the federal courts routinely resolve all such claims. There is nothing improper about Johnson, or any other litigant, following this well established and commonly used practice. The Court acknowledges that California has established a heightened pleading standard for high frequency litigants. As such, considerations of comity favor permitting California courts to follow, interpret, and enforce California pleading standards. However, as explained in *Schoors* and *Johnson*, it is not efficient, convenient, or fair to require Johnson to file two nearly identical cases involve materially identical proof and issues.  It is judicially more economical for a single court to resolve the dispute between Johnson and MSM, instead of requiring duplicative efforts in multiple courts, possibly involving multiple juries, and possibly leading to inconsistent results. Finally, even if Johnson is forum shopping, the Court continues to find that such forum shopping is not sufficient to justify declining supplemental jurisdiction.
>
> [*Johnson v. Morning Star Merced, LLC*, 2018 WL 4444961, *6 (E.D. Cal. 2018) (citations omitted for readability).]

## VII.   CONCLUSION

Whitaker respectfully requests this Court deny Defendant's motion.

Dated: January 17, 2020                    CENTER FOR DISABILITY ACCESS

                                           By:      /s/ Russell Handy
                                           Russell Handy, Esq.
                                           Attorneys for Plaintiff

Opposition to Motion to Dismiss                Case: 2:19-cv-09457-JAK-AS